# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:17-CV-00037-KDB-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL., TARYYN HARTNETT AND DANA SHOCHED,<br><br>Plaintiffs,<br><br>v.<br><br>PHYSICIANS CHOICE LABORATORY SERVICES, LLC; DOUGLAS SMITH, PHILIP MCHUGH AND MANOJ KUMAR,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendant Philip McHugh's Motion to Dismiss Complaint in Intervention (Doc. No. 73). The Court has carefully considered this motion and the parties' related briefs and exhibits, and it is ripe for decision. For the reasons discussed below, the Court finds that Plaintiff United States of America (the "United States" or "Government") has, in the context of this motion to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), adequately pled its asserted False Claims Act ("FCA") and related state law claims. Therefore, the Court will **DENY** the motion.

## I.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id*. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*.

Ordinarily, a plaintiff need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 9 of the Federal Rules of Civil Procedure creates an exception to this notice pleading standard for "Pleading Special Matters," requiring, *inter alia*, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Claims under the FCA must meet the more stringent "particularity" pleading requirements of Rule 9(b). *See United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir.2014).

Specifically, for an FCA claim, Rule 9(b) requires that "an FCA plaintiff must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir.2008). However, "knowledge, and other conditions of a person's mind may be alleged generally." *See* Fed. R. Civ. P. 9(b). The Fourth Circuit has articulated four purposes of the Rule 9(b) pleading standard: (1) to put defendants on notice of the conduct at issue so that defendants have sufficient information to answer and defend themselves; (2) to protect defendants from frivolous lawsuits; (3) to avoid fraud

2

actions where the relevant facts are not known prior to discovery; and (4) to protect defendants from negative consequences of being named as defendants in fraud actions, such as damage to their goodwill and reputation. *See Maguire Fin., LP v. PowerSecure Int'l, Inc*., 876 F.3d 541, 546 (4th Cir. 2017); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

## II. FACTS AND PROCEDURAL HISTORY[1]

Defendant Physicians Choice Laboratory Services, LLC ("PCLS") is an independent diagnostic laboratory specializing in urine drug testing ("UDT"). Defendants Douglas Smith and Philip McHugh are two of the three founders, and current owners, of PCLS. The United States alleges that PCLS has grown its business by convincing physicians to order UDTs for their patient populations regardless of whether the tests were medically necessary for each patient. Further, and more directly relevant to these proceedings, the Government contends that in addition to aggressive marketing practices, Defendants engaged in several illegal schemes to provide remuneration to doctors to induce them to refer tests to the laboratory in violation of the Anti-Kickback Statute. 42 U.S.C. § 1320a-7b(b) (the "AKS").

The United States alleges in detail three specific schemes that McHugh and the other defendants planned and implemented that allegedly violated the AKS and caused fraudulent claims to be submitted to Medicare. First, McHugh allegedly induced physicians to refer tests to PCLS by providing office equipment and associated services to physicians in exchange for sending their referrals to PCLS. Doc. No. 38 at ¶¶ 159-219. Second, McHugh allegedly entered an illegal contract to pay co-defendant Manoj Kumar ("Kumar") to send referrals to PCLS from two physician practices that Kumar managed. *Id.* at 220-232. Finally, McHugh allegedly made large loans to two physicians in exchange for their referrals to PCLS. *Id*. at 233-254. PLCS then

---

[1] The facts described below are taken from the Complaint of the United States, Doc. No. 38.

3

allegedly submitted claims to Medicare for the testing services provided to the patients referred to PCLS as a result of the alleged kickback schemes.

On January 7, 2014, a *qui tam* complaint generally relating to these and/or other allegations was filed in the Eastern District of Tennessee under the *qui tam* provisions of the False Claims Act (the "Tennessee Complaint") against fifty (50) defendants, including defendant McHugh. On November 10, 2014, relators Taryn Hartnett and Dana Schoched filed a *qui tam* complaint in the Middle District of Florida (the "Florida Complaint"), against several defendants but not including McHugh. Both the Tennessee and Florida Complaints were transferred to this Court in January 2017 and later consolidated into one action (Doc. No. 37).

On June 20, 2019, the United States filed its Complaint in intervention asserting numerous claims related to PCLS, Douglas Smith and other defendants,[2] including four counts against defendant McHugh (Counts I & II under the False Claims Act; Count III payment by mistake and Count IV unjust enrichment). Following the filing of the United States' Complaint, the relators elected not to pursue any of the remaining non-intervened claims and this Court entered an order dismissing the non-intervened claims with prejudice as to the relators and without prejudice as to the United States and the plaintiff states in the two *qui tam* complaints (Doc. No. 62). The United States' Complaint in intervention, Doc. No. 38 (the "Complaint"), is now the only operative complaint in this case. In the present motion, McHugh seeks to dismiss each of the four counts asserted against him in the Complaint.

---

[2] Included in the Complaint were allegations against Kumar arising from the alleged scheme in which he was involved. The Governments claims against Kumar have now been settled pursuant to a Settlement Agreement in which Kumar agreed to pay to the United States over $649,000, obtained a release from liability under the False Claims Act and for other claims, but did not admit wrongdoing or liability. See Doc. No. 93-1.

## III. DISCUSSION

In this action, the United States contends that McHugh and others violated the FCA by knowingly causing the submission of false Medicare claims after engaging in illegal schemes to provide remuneration to doctors to induce them to refer tests to PCLS in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). McHugh contends that the Government has failed to provide sufficient factual details to adequately plead its FCA claims under Rules 9(b) and 12(b)(6). The United States argues in response that its Complaint describes McHugh's schemes in detail and pleads facts that explain who was involved in the schemes, what the schemes were, and when, where and how the schemes were implemented. Thus, according to the Government, the Complaint clearly makes McHugh aware of the particular circumstances for which he will have to prepare a defense at trial. As discussed below, this Court agrees with the United States that the Complaint pleads the schemes in which McHugh was allegedly involved with sufficient detail to satisfy the applicable pleading rules.

Specifically, the United States alleges McHugh violated two provisions of the FCA. First, the Government alleges that McHugh violated 31 U.S.C. § 3729(a)(1)(A) because he knowingly caused the submission of false or fraudulent Medicare claims for payment or approval to the United States. Section 3729(a)(1)(A) states that any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval…" has violated the FCA. Second, the Government alleges McHugh violated Section 3729(a)(1)(B) by causing PCLS to make false records material to false or fraudulent claims. Section 3729(a)(1)(B) states that any person who "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim…" has violated the FCA.

To prove a violation of the FCA, a plaintiff must allege four elements: 1) a false statement or fraudulent course of conduct; 2) made with the requisite scienter; 3) that is material; and 4) that results in a claim to the Government. *United States ex rel. Badr v. Triple Canopy, Inc.,* 775 F.3d 628, 634 (4th Cir. 2015) (vacated and remanded on other grounds.) "Scienter under the FCA encompasses actual knowledge, deliberate indifference, and reckless disregard, but does not require proof of specific intent to defraud." *Id.* citing 31 U.S.C. § 3729(b)(1).

AKS makes it a violation, *inter alia*, to "knowingly and willfully offer[ ] or pay[ ] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind" to induce the referral of business reimbursable under a federal health care program. 42 U.S.C. § 1320a-7b(b)(2). A person "who offers or pays remuneration to another person violates the [AKS] so long as one purpose of the offer or payment is to induce Medicare or Medicaid patient referrals." *United States vs. McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000); see also *United States v. Greber*, 760 F.2d 68, 69 (3rd Cir. 1985) ("if one purpose of the payment was to induce future referrals, the Medicare statute had been violated").

A violation of the AKS also requires the United States to show that the defendant acted "knowingly and willfully." For the purposes of the AKS, a person acts willfully if he knew the conduct was wrongful or the act was committed voluntarily and purposely, with the intent to disobey or disregard the law. *United States v. Starks,* 157 F.3d 833, 838 (11th Cir. 1998); *United States v. Jain,* 93 F.3d 436, 441 (8th Cir. 1996) (violations of AKS requires only "proof that [Defendant] knew that his conduct was wrongful, rather than proof that he knew it violated 'a known legal duty.'"). Thus, a person can violate AKS without knowing of AKS or having the specific intent to violate the section. Id. § 1320a-7b(h). "Indeed, the giving or taking of kickbacks

6

for medical referrals is hardly the sort of activity that a person might expect to be legal." *Starks*, 157 F. 3d at 838.

An AKS violation resulting in a federal health care payment automatically constitutes a false claim under FCA. *United States ex rel. Lutz v. United States*, 853 F.3d 131, 135 (4th Cir. 2017) (citing 42 U.S.C. § 1320a-7b(g)). Therefore, in summary, the United States must, at this stage of the case, plausibly establish (in accordance with the applicable pleading requirements) that McHugh violated the AKS resulting in claims submitted to Medicare.

The Government alleges that McHugh violated the Anti-Kickback Statute in three ways, by: (1) inducing referrals through providing medical diagnostic equipment (analyzers) to physicians; (2) paying co-defendant Kumar to send referrals to PCLS from two physician practices that he managed; and (3) inducing referrals through loans to two physicians. The United States summarizes the sufficiency of its allegations of these schemes as follows:

> The Complaint provides every detail necessary for pleading fraud under Fed R. Civ. P. 9(b). First, the Government alleges that McHugh engaged in multiple kickback schemes to knowingly and willfully induce referrals for excessive UDTs. Complaint at Page 1 and ¶ 126. The Government describes: 1) the type of testing involved (Complaint at ¶¶ 72-90); 2) Medicare's requirements for payment of such tests (*Id.* at ¶63-69); and 3) PCLS's business practices and billing for UDTs (*Id.* at ¶¶ 91-125). The Complaint then details each of McHugh's fraudulent schemes: 1) the provision of analyzers to physicians to induce UDT referrals to PCLS (*Id.* at ¶¶ 159-219); 2) paying Defendant Kumar to deliver UDT referrals from the offices of Drs. Masimore and Shah (*Id.* at ¶¶220-232); and 3) providing loans to physicians in exchange for UDT referrals to PCLS (*Id.* at ¶¶ 233-254).
>
> In every scheme, the United States has pled the who, what, when, where and how of the fraud: 1) Participants in the kickback schemes are identified by name (who); 2) the remuneration used to induce the physicians is identified in each scheme (what); 3) when the AKS violations occurred and subsequent submission of tainted claims are identified in each scheme (when); 4) the physician practices that provided referrals to McHugh's lab are each identified (where); and 5) McHugh's actions in planning and implementing each scheme are described in detail (how). Finally, the United States has identified the number of claims submitted to Medicare and the amount Medicare paid for the claims caused by the inducement schemes. *Id.* at ¶¶ 203 (Johnson analyzer), 219 (Nickels analyzer), 230-231(Kumar commissions), 244 (Florete loan), and 254 (Jayachandran loan).

Doc. No. 80 at 7-8. *See also Id*. at 8-14 (describing the allegations establishing each scheme in more detail).

The Court finds that these allegations are indeed sufficient to meet the Government's Rule 9 and Rule 12 pleading burdens on a motion to dismiss. The Complaint pleads facts that explain the "who, what, when, where and how" related to the schemes and plainly provides McHugh enough detailed information on the alleged wrongful conduct to allow him to defend against the allegations. Further, it appears readily apparent that this case is neither frivolous nor an improper fishing expedition in search of facts to support a speculative claim. Therefore, the Court will deny the motions to dismiss the United States' FCA claims against McHugh.

Similarly, the Court finds that the United States has sufficiently pled its state law claims for payment by mistake of fact and unjust enrichment (Counts III and IV) at this early stage of the case. As McHugh acknowledges, courts consider "unjust enrichment and payment by mistake claims together, as they arise out of the same common law restitution principles." *United States v. Massenburg*, No. 2:03-0437, 2004 WL 2370694, at *6 (S.D. W.Va. Oct. 21, 2004). The United States has alleged that McHugh is an owner of PCLS, a closely held company. As such, it is reasonable to infer for the purposes of this motion that McHugh directly benefited and was thus unjustly enriched by the alleged illegal schemes that resulted in millions of dollars of improper Medicare payments to PCLS. The Government's claims of unjust enrichment and payment by mistake of fact will accordingly be allowed to proceed, without prejudice to McHugh's right to raise his arguments against these claims again in a summary judgment motion if discovery fails to establish that he was personally unjustly enriched by any unlawful scheme.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant Philip McHugh's Motion to Dismiss Complaint in Intervention (Doc. No. 73) is **DENIED;** and

2. This case shall **proceed to discovery and further proceedings on the merits on the remaining claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 5, 2020

Kenneth D. Bell
United States District Judge