Exhibit 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"), Philip McHugh, James D. Jenkins, Elizabeth Coyle, and Elizabeth Merry (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.      Philip McHugh is a resident of Charlotte, North Carolina.  During the time of the Covered Conduct (as defined below), he was a member, owner and agent of Physicians Choice Laboratory Services, LLC d/b/a Physicians Choice ("PCLS"), a diagnostic testing laboratory operating initially in Charlotte, North Carolina, later relocated to Rock Hill, South Carolina.

B.      On January 7, 2014, James D. Jenkins, Elizabeth Coyle, and Elizabeth Merry (the "Jenkins Relators") filed a *qui tam* action in the United States District Court for the Eastern District of Tennessee pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). The case was transferred to the United States District Court for the Western District of North Carolina in January 2017 under the case number 3:17-cv-46 (the "Jenkins Action").  The Jenkins Relators alleged violations of the False Claims Act, 31 U.S.C. §§ 3729-3730 (the "FCA"), arising out of violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b (the "AKS") and/or the Prohibition on Certain Physician Referrals, 42 U.S.C. § 1395nn (the "Stark Law"), that resulted in the submission of false claims to the Medicare program.  Philip McHugh was named as a defendant in the Jenkins Action based on his ownership interest in and alleged role as a manager and/or registered agent of PCLS.

C.      On November 10, 2014, Taryn Hartnett and Dana Shoched (the "Hartnett Relators") filed a *qui tam* action in the United States District Court for the Middle District of

Exhibit 1

Florida pursuant to the *qui tam* provisions of the FCA, 31 U.S.C. § 3730(b). The case was transferred to the United States District Court for the Western District of North Carolina in January 2017 under the case number 3:17-cv-37 (the "Hartnett Action"). The Hartnett Relators alleged violations of the FCA, arising out of violations of the AKS and/or Stark Law that resulted in the submission of false claims to the Medicare program. Philip McHugh was not named as a defendant in the Hartnett Action.

D. On February 19, 2019, the United States of America partially intervened in both the Hartnett Action and Jenkins Action with respect to the allegations that: (1) PCLS and certain agents paid illegal kickbacks to Jim Lord and the practice Southeast Spine and Pain Associates; and (2) PCLS and Douglas Smith violated the AKS and Stark Law through the provision of MedX software to physician practices. The United States declined to intervene in the remainder of both the Hartnett Action and the Jenkins Action.

E. On June 20, 2019 the Jenkins Action and Hartnett Action were consolidated under Case Number 3:17-cv-37 and the United States filed its Complaint in Intervention. In its Complaint in Intervention, the United States contends that Philip McHugh caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare") in violation of the FCA. Upon Relators' motion and with the consent of the United States, the Court dismissed the declined claims and found the Complaint in Intervention to be the operative complaint.

F. As alleged in the Complaint in Intervention, the United States contends that it has certain civil claims against Philip McHugh arising from his participation in kickback schemes: (1) to provide urine drug testing equipment, including desktop analyzers and associated supplies and services, to physicians John Johnson and John Nickels in order to induce their referrals of quantitative urine drug tests to PCLS; (2) to cause PCLS to pay volume-based commissions, and

Exhibit 1

later a salary, to Manoj Kumar in exchange for Kumar's exercise of influence over the practices of physicians Gregory Masimore and Yunus Shah in order to induce their referrals of quantitative urine drug tests to PCLS; and (3) to provide loans to physicians Orlando Florete and Sanker Jayachandran in order to induce their referrals of quantitative urine drug tests to PCLS—and the United States alleged that such conduct caused PCLS to submit false claims to Medicare during the period from June 20, 2013, through October 26, 2015. That conduct is referred to below as the "Covered Conduct."

G.      This Settlement Agreement is neither an admission of liability by Philip McHugh nor a concession by the United States that its claims are not well founded.

H.      The Jenkins Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.      Philip McHugh agrees to pay the United States the principal sum of Two Million Twenty-One Thousand Seven Hundred and Ninety-Five Dollars and Fifty-Seven Cents ($2,021,795.57) (the "Settlement Amount"), of which Seven Hundred and Seventy Thousand Five Hundred and Fifty-Four Dollars and Eighty-Seven Cents ($770,554.87) is restitution. On April 23, 2021, Philip McHugh will make an initial payment to the United States in the amount of Two Hundred and Two Thousand One Hundred and Seventy-Nine Dollars and Fifty-Six Cents ($202,179.56) by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Western District of North Carolina.

3

Exhibit 1

A.      Over a period of ten (10) years, Philip McHugh will pay the remaining One Million Eight Hundred and Nineteen Thousand Six Hundred and Sixteen Dollar and One Cent ($1,819,616.01), plus interest at 1.125% per annum (the "Settlement Payments") in annual installments, with the first such installment due on April 23, 2022, and each subsequent installment due on the 23rd day of April of each successive year thereafter until the Settlement Payments are paid in full (the "Payments Over Time"). The Parties have attached a pay schedule as <u>Exhibit A</u> that shows the total Settlement Payments and Payments Over Time that will come due and owing under this Agreement except in the event of a prepayment or nonpayment, either of which may affect the total amount of interest due and owing under this Agreement.

B.      The Settlement Amount may be prepaid, in whole or in part, without penalty or premium. Prepayments shall be applied first to interest accrued through the date of the prepayment, then to the balance of the Settlement Amount (i.e., the principal balance). Except as set forth in this Paragraph, prepayments shall not relieve Philip McHugh of the obligation to make the Payments Over Time, on schedule, in the amounts set forth on <u>Exhibit A</u>. If a prepayment leaves a total balance (principal and interest) of the Settlement Payments of less than the next scheduled payment as set forth on <u>Exhibit A</u>, then Philip McHugh shall pay such balance in full on the next scheduled payment date, at which point Philip McHugh's payment obligations hereunder shall be fully satisfied.

2.      Subject to the exceptions in Paragraph 4 (concerning reserved claims) below, and subject to Paragraph 13 (concerning default), and Paragraph 14 (concerning bankruptcy) below, and upon the United States' receipt of the total Settlement Amount, plus interest due under Paragraph 1(A), the United States releases Philip McHugh from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud

4

Exhibit 1

Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

3.      Subject to the exceptions in Paragraph 4 below, and subject to Paragraph 13 (concerning default), and Paragraph 14 (concerning bankruptcy) below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1(A), the Jenkins Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release Philip McHugh from any civil monetary claim the Jenkins Relators have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

4.      Notwithstanding the releases given in Paragraphs 2 and 3 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; and

e.      Any liability based upon obligations created by this Agreement.

5.      The Jenkins Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  In connection with this Agreement and the Jenkins Action, the Jenkins Relators and their heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the United States in the

5

Exhibit 1

Jenkins Action in order to dismiss the Jenkins Action, nor any dismissal of the Jenkins Action, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including but not limited to 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar Relators from sharing in the proceeds of this Agreement. Moreover, the United States and Relators and their heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that Relators should receive of any proceeds of the settlement of their claim(s), and that no agreements concerning the Jenkins Relators' share have been reached to date. The United States does not contest that Relators are entitled to a share percentage in the proceeds of this Settlement Agreement as set forth in Paragraph 1.

6.      The Jenkins Relators reserve their claim for the payment of expenses, attorneys' fees, and costs for which Philip McHugh may be liable under 31 U.S.C. § 3730(d) and agree that the Court shall retain jurisdiction with regards to their claim.

7.      Philip McHugh waives and shall not assert any defenses Philip McHugh may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

8.      Philip McHugh fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Philip McHugh has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

Exhibit 1

9.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Philip McHugh agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

10.    Philip McHugh agrees to the following:

a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Philip McHugh in connection with:

(1)    the matters covered by this Agreement;

(2)    the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)    Philip McHugh's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)    the negotiation and performance of this Agreement; and

(5)    the payment Philip McHugh makes to the United States pursuant to this Agreement and any payments that Philip McHugh may make to the Jenkins Relators, including costs and attorneys' fees

7

Exhibit 1

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b.    Future Treatment of Unallowable Costs:    Unallowable Costs shall be separately determined and accounted for by Philip McHugh, and Philip McHugh shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Philip McHugh or any of his subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.    Treatment of Unallowable Costs Previously Submitted for Payment: Philip McHugh further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Philip McHugh or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  Philip McHugh agrees that the United States, at a minimum, shall be entitled to recoup from Philp McHugh any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.  The United

Exhibit 1

States reserves its rights to disagree with any calculations submitted by Philip McHugh or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Philip McHugh or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

       d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Philip McHugh's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

11.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 12 (waiver for beneficiaries paragraph), below.

12.     Philip McHugh agrees that he waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

13.     The Settlement Amount is to be paid over time as set forth in Paragraph 1, above.

       a.      In the event that Philip McHugh fails to pay the Settlement Amount as provided in the payment schedule set forth in Paragraph 1 above, Philip McHugh shall be in Default of Philip McHugh's payment obligations ("Default"). The United States will provide a written Notice of Default, and Philip McHugh shall have an opportunity to cure such Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment. Notice of Default will be delivered to Philip McHugh, or to such other representative as Philip McHugh shall designate in advance in writing. If Philip McHugh fails to cure the Default within seven (7) calendar days of receiving the

9

Exhibit 1

Notice of Default and in the absence of an agreement with the United States to a modified payment schedule, Philip McHugh shall be in Uncured Default of Philip McHugh's payment obligations ("Uncured Default").

b.       In the event of Uncured Default, Philip McHugh agrees that the United States, at its sole discretion, may (i) retain any payments previously made, and (ii) may immediately and without further notice seek entry of a consent order allowing final judgment in the Settlement Amount, reduced by the amount of any Settlement Payments previously made by Philip McHugh to the United States under this Agreement, to be entered against Philip McHugh, such judgment to be subject to interest accruing from the date of entry and at the applicable Treasury post-judgment interest rate, computed daily and compounded annually.  The United States agrees to refrain from seeking entry of a consent order allowing final judgment during the 10-year period following the Effective Date of this Agreement provided that Philip McHugh complies with the terms of this Agreement and is not in Default.  If the Settlement Amount (plus interest) is not paid in full within the 10-year period following the Effective Date of this Agreement, the United States will seek entry of a consent order, with credit to be given for any Settlement Payments.  Philip McHugh agrees not to contest any action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

c.       In the event of Uncured Default, OIG-HHS may exclude Philip McHugh from participating in all Federal health care programs until Philip McHugh pays the Settlement Amount, with interest, as set forth above (Exclusion for Default).  OIG-HHS will provide written notice of any such exclusion to Philip McHugh.  Philip McHugh waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court.  Reinstatement to program participation is not

Exhibit 1

automatic. If at the end of the period of exclusion, Philip McHugh wishes to apply for reinstatement, he must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Philip McHugh will not be reinstated unless and until OIG-HHS approves such request for reinstatement. The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

14.     In exchange for valuable consideration provided in this Agreement, Philip McHugh acknowledges the following:

a.      Philip McHugh has reviewed his financial situation and warrants that he is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

b.      In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Philip McHugh, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c.      The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d.      The Parties do not intend to hinder, delay, or defraud any entity to which Philip McHugh was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e.      If Philip McHugh's obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Philip McHugh or a third party commences a case, proceeding, or other action under any law relating to bankruptcy,

Exhibit 1

insolvency, reorganization, or relief of debtors seeking any order for relief of Philip McHugh's debts, or to adjudicate Philip McHugh as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for Philip McHugh or for all or any substantial part of Philip McHugh's assets:

(i) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Philip McHugh for the claims that would otherwise be covered by the releases provided in Paragraph 2 above;

(ii) the United States has an undisputed, noncontingent, and liquidated allowed claim against Philip McHugh in the amount of Two Million Three Hundred and Eleven Thousand Six Hundred and Sixty-Four Dollars and Sixty-One Cents ($2,311,664.61) less any payments received pursuant to this agreement, provided, however, that such payments are not otherwise avoided and recovered from the United States by Philip McHugh, a receiver, trustee, custodian, or other similar official for Philip McHugh; and

(iii) if any payments are avoided and recovered from the United States by Philip McHugh, a receiver, trustee, custodian, or similar official for Philip McHugh, the Jenkins Relators shall, within thirty days of written notice from the United States to the undersigned Relators' counsel, return any portions of such payments already paid by the United States to Relators pursuant to Paragraph 5.

f.     Philip McHugh agrees that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 14.e is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power.  Philip McHugh shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1).  Philip McHugh waives

Exhibit 1

and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Philip McHugh that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on June 20, 2019.

15.     Upon receipt of the initial payment described in Paragraph 1, above, the Parties shall promptly sign and file in the consolidated Hartnett Action and Jenkins Action a Joint Stipulation of Dismissal as to Philip McHugh pursuant to Rule 41(a)(1), except as provided in Paragraph 6.  This dismissal shall not affect any defendants other than Philip McHugh.

16.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except as described in Paragraph 6, above.

17.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

18.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of North Carolina.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

20.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

Exhibit 1

21.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22.     This Agreement is binding on Philip McHugh's successors, transferees, heirs, and assigns.

23.     This Agreement is binding on the Jenkins Relator's successors, transferees, heirs, and assigns.

24.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

25.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).   Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

***

Exhibit 1

| | PHILIP McHUGH<br>PAYMENTS OVER TIME<br>EXHIBIT A | | | | |
|---|---|---|---|---|---|

| YEAR | PAYMENT AMOUNT | PAYMENT DUE DATE | INTEREST PAYMENT | PRINCIPAL PAYMENT | BALANCE |
|---|---|---|---|---|---|
| 1 | $ 193,409.37 | 4/23/2022 | $ 20,470.68 | $ 172,938.69 | $ 1,646,677.31 |
| 2 | $ 193,409.37 | 4/23/2023 | $ 18,525.12 | $ 174,884.25 | $ 1,471,793.07 |
| 3 | $ 193,409.37 | 4/23/2024 | $ 16,557.67 | $ 176,851.69 | $ 1,294,941.37 |
| 4 | $ 193,409.37 | 4/23/2025 | $ 14,568.09 | $ 178,841.28 | $ 1,116,100.09 |
| 5 | $ 193,409.37 | 4/23/2026 | $ 12,556.13 | $ 180,853.24 | $ 935,246.85 |
| 6 | $ 193,409.37 | 4/23/2027 | $ 10,521.53 | $ 182,887.84 | $ 752,359.01 |
| 7 | $ 193,409.37 | 4/23/2028 | $ 8,464.04 | $ 184,945.33 | $ 567,413.69 |
| 8 | $ 193,409.37 | 4/23/2029 | $ 6,383.40 | $ 187,025.96 | $ 380,387.72 |
| 9 | $ 193,409.37 | 4/23/2030 | $ 4,279.36 | $ 189,130.01 | $ 191,257.72 |
| 10 | $ 193,409.37 | 4/23/2031 | $ 2,151.65 | $ 191,257.72 | $ - |

Exhibit 1

## <u>THE UNITED STATES OF AMERICA</u>

WILLIAM T. STETZER
Acting United States Attorney for the
Western District of North Carolina

DATED: 03/23/2021   BY:   KATHERINE ARMSTRONG

Digitally signed by KATHERINE ARMSTRONG
Date: 2021.03.23 11:55:49 -04'00'

_____

Katherine T. Armstrong
J. Seth Johnson
Assistant United States Attorneys


DATED: _____   BY:   _____

Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

Exhibit 1

## THE UNITED STATES OF AMERICA

WILLIAM T. STETZER
Acting United States Attorney for the
Western District of North Carolina

DATED: _____     BY: _____

Katherine T. Armstrong
J. Seth Johnson
Assistant United States Attorneys

DATED: 3/23/2021     BY: _____

Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

15

Exhibit 1

## PHILIP MCHUGH - DEFENDANT

DATED: 3·24-21            BY: _____
                              ~~Philip~~ McHugh

DATED: _____            BY: _____
                              Bo Caudill
                              Matthew M. Villmer
                              Counsel for Philip McHugh

16

Exhibit 1

## PHILIP MCHUGH - DEFENDANT

DATED: _____    BY: _____

                                       Philip McHugh

DATED: _____    BY:   /s/ Bo Caudill

                                         Bo Caudill
                                         Matthew M. Villmer
                                         Counsel for Philip McHugh

16

Exhibit 1

## JAMES D. JENKINS, ELIZABETH COYLE AND ELIZABETH MERRY - RELATORS

DATED: _3/23/2021_ BY: _____
James D. Jenkins

DATED: _____ BY: _____
Elizabeth Coyle

DATED: _____ BY: _____
Elizabeth Merry

DATED: _3/23/2021_ BY: _____
David A. Burkhalter, II
D. Alexander Burkhalter III
Counsel for James D. Jenkins, Elizabeth Coyle and
Elizabeth Merry

Exhibit 1

**JAMES D. JENKINS, ELIZABETH COYLE AND ELIZABETH MERRY - RELATORS**

DATED: _____ BY: _____
James D. Jenkins

DATED: 3/25/21 BY: _____
Elizabeth Coyle

DATED: _____ BY: _____
Elizabeth Merry

DATED: 3/23/2021 BY: _____
David A. Burkhalter, II
D. Alexander Burkhalter III
Counsel for James D. Jenkins, Elizabeth Coyle and
Elizabeth Merry

17

Exhibit 1

## JAMES D. JENKINS, ELIZABETH COYLE AND ELIZABETH MERRY - RELATORS

DATED: _____     BY:   _____
                                    James D. Jenkins


DATED: _____     BY:   _____
                                    Elizabeth Coyle


DATED: 3/25/2021     BY:   _____
                                    Elizabeth Merry


DATED: 3/23/2021     BY:   _____
                                    David A. Burkhalter, II
                                    D. Alexander Burkhalter III
                                    Counsel for James D. Jenkins, Elizabeth Coyle and
                                    Elizabeth Merry

17