IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL FILE NO. 3:17-CV-37

UNITED STATES OF AMERICA *ex rel.*
TARYN HARTNETT, and DANA
SHOCHED,

     Plaintiffs,

v.

PHYSICIANS CHOICE LABORATORY
SERVICES, DOUGLAS SMITH, PHILIP
MCHUGH AND MANOJ KUMAR,

     Defendants.

## **ORDER**

**THIS MATTER** is before the Court on the final two pending motions in this lengthy litigation. Defendant Douglas Smith has filed a Motion for Relief From Judgment Pursuant to Rule 60(b)(3) FRCP (Doc. No. 157) in which he asks the Court to relieve him from the Final Judgment and Consent Order (Doc. No. 146) in which he agreed to pay a substantial sum of money to resolve the claims against him. Also, Relators have filed a Motion for Statutory Attorneys' Fees and Expenses (Doc. No. 148) seeking an award of attorneys' fees and expenses from Defendant Smith and Defendant Philip McHugh, jointly and severally. The Court has carefully considered these motions and the parties' briefs and exhibits filed in support and in opposition. For the reasons discussed below, the Court will DENY Defendant Smith's Rule 60(b) motion and GRANT IN PART the Relators' motion for attorneys' fees.

### I.    **Defendant Smith's Rule 60(b) Motion**

On March 30, 2021, the Court entered an Order granting the United States' Unopposed Motion for Entry of Consent Order and Entry of Final Judgment Against Defendant Douglas Smith (*See* Doc. Nos. 145-146). The Clerk's Judgment was then entered based on that Order. (Doc. No. 47). Smith – a

1

former medical doctor and experienced businessman – chose not to be represented by counsel in connection with the negotiation of this Consent Order or the February 9, 2021 mediation during which the Parties reached their agreement. In early May 2021, shortly following the beginning of the government's efforts to collect or arrange payment of the Judgment, Smith engaged counsel and, approximately a month later on June 8, 2021 (after Smith's counsel's attempt to "renegotiate" the settlement was unsuccessful), Smith filed, through counsel, a motion pursuant to Rule 60(b)(3) to be relieved of the Judgment. Broadly stated, the grounds for the motion are Smith's allegations that the Assistant United States Attorneys representing the government "misrepresented and engaged in misconduct" that had the effect of impeding Smith's opportunity to engage counsel and/or misled the Court concerning Smith's intention to engage counsel. As discussed below, the Court finds no evidence that the government's counsel engaged in misconduct or that the Court was misled concerning Smith's engagement of counsel. Accordingly, Smith's Rule 60(b)(3) motion will be denied, and the Judgment to which Smith voluntarily agreed will remain in force notwithstanding his apparent current regret over the settlement.

## A.     Legal Standard

Rule 60(b) relief is an "extraordinary" remedy, and "is only to be invoked upon a showing of exceptional circumstances." *Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir. 1979) (noting Rule 60(b) has invested federal courts "with the power in certain restricted circumstances to 'vacate judgments whenever such action is appropriate to accomplish justice'") (internal quotations and citations omitted). Federal Rule of Civil Procedure 60(b) provides, in relevant part, that "on motion and just terms," the Court may "relieve a party ... from a final judgment, order, or proceeding ..." on the grounds of, among other grounds, "(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Rule 60(b)(3) does not address the "merits of a judgment or order," but rather "focuses on the unfair

2

means by which a judgment or order is procured." *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1010 (4th Cir. 2014) (citing *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994)). The Fourth Circuit has identified three factors that a moving party must show to prevail on a motion under Rule 60(b)(3): "(1) the moving party must have a meritorious defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) the misconduct prevented the party from fully presenting its case." *Schultz*, 24 F.3d at 630 (citing *Square Constr. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981)). Even if a moving party satisfies these three prongs, the Court must still "balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case." *Id.*

A federal district court also has inherent power to dismiss an action where a party "deceives a court" or "abuses the process at a level that is utterly inconsistent with the orderly administration of justice ...." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). However, this power must be exercised with "restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

## B. Discussion

In considering Smith's motion, the Court need not (and does not) determine the first element of whether he has a meritorious defense because he has failed to establish any "misconduct" by the Assistant United States Attorneys or that he did not have a full and fair opportunity to present his case to the Court. The basic relevant facts do not appear to be materially disputed, although the parties of course interpret them differently.

In 2019, the United States filed its Complaint in Intervention under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, alleging that Smith orchestrated an unlawful scheme to pay kickbacks to induce the referral of patient urine samples for urine drug testing to Physicians Choice

3

Laboratory Services ("PCLS"), a toxicology lab founded in part by Smith, and in which he had significant ownership and financial interests. (Doc. Nos. 38, 128-1). The United States contends that the Medicare program suffered over $2.6 million in losses directly attributable to Smith's individual conduct, which caused PCLS to submit thousands of false claims. (Doc. No. 128-13 at ¶¶ 14, 29-32) and that the United States would have been entitled to treble damages and civil penalties of approximately $7.8 million if it prevailed at trial.

On January 21, 2021, Assistant United States Attorney ("AUSA") Katherine Armstrong emailed one of the Court's law clerks to inform the Court that the United States and Defendant Phillip McHugh had preliminarily reached a settlement agreement (subject to governmental approvals), and noted the United States was still pursuing claims against Smith, which were set for trial on March 8, 2021. In response, the law clerk inquired about the status of those claims and Smith's participation in the case, specifically requesting that AUSA Armstrong make a further effort to communicate with Smith. Following up on that request, AUSAs Armstrong and Seth Johnson called Smith the same day and advised him that the Court was inquiring into his participation in the litigation and wanted to hold a status conference in the near future. Shortly after that call, Armstrong updated the Court by email (copying Smith), indicating that Smith was available for a status conference and informing the Court that Smith "anticipates hiring counsel" and "raised the possibility of exploring settlement options with the United States." (Doc. No. 158-1). A status conference was then set for January 27, 2021. (Jan. 22, 2021 Dkt. Entry).

During the January 27, 2021 status conference, Smith was well-spoken and appeared to understand the nature of the litigation and the claims against him (as would be expected in light of his medical education and prior positions as a corporate healthcare executive). Smith told the Court that he was interested in pursuing settlement negotiations to resolve the claims against him, and when the Court spoke with Smith specifically about whether he intended to engage counsel he said that he might do so in the event that he was unable to work out a settlement. Thus, the possibility that Smith might

4

engage counsel was made clear to the Court during the conference, as was Smith's choice to pursue

settlement in advance of engaging counsel. Following the status conference, the Court issued a text-

only order reflecting the discussion, which provided in part that: "the Parties will be given two weeks

until 2/10/2021 to report back to the Court concerning their imminent settlement discussions and

whether Defendant Smith intends to engage counsel." (Jan. 27, 2021 Dkt. Entry).

The AUSAs and Smith then exchanged several emails agreeing to participate in and scheduling

a mediation as well as a settlement meeting in advance of the mediation. As part of those

communications, AUSA Armstrong fully disclosed (to the extent it was not already abundantly clear)

that she did not represent Smith and that he had the opportunity to have his own lawyer:

> Doug, unfortunately, [the mediator's] earliest availability appears to be on the
> 9th. *As a reminder, I represent the United States in this case and cannot give you any
> legal advice.* However, my thought is that the Court gave us two weeks anticipating
> the difficulty of scheduling a qualified neutral on such short notice. *Additionally, I
> understood the two week period to be for your benefit and opportunity to find legal
> counsel.*
> But to answer your initial question, yes, I think it is OK to go forward with
> mediation on the 9th. If you have a settlement offer that you'd like to make prior to the
> mediation, we are also happy to hear it before that date.

(Doc. No. 161-1 at 34) (emphasis added).

After the in-person meeting at the U.S. Attorney's Office (which had been requested by Smith)

did not resolve the dispute on January 29, 2021, the Parties participated in a mediated settlement

conference with the Hon. Robert T. Sumner, a former North Carolina Superior Court Judge serving as

the mediator. At the mediation, the United States and Smith agreed to resolve the case upon entry of a

$4.5 million judgment against Smith. Smith did not inform the United States that he desired to retain

an attorney to represent him for purposes of settlement negotiations during or after the mediated

settlement conference and there is no evidence from Smith or any other source that he informed the mediator that he wanted to engage counsel to represent him at the mediation.[1]

On February 10, 2021, the United States filed a "Certificate of Settlement Conference and Status Update," reporting to the Court that the United States and "*pro se* Defendant Smith" had resolved the United States' claims against Smith pursuant to certain terms and subject to the United States obtaining the necessary approvals. (Doc. No. 140). A copy of this document was sent to Smith via email with an explanation of the filing (specifically, that it was an update to the court "advising of our [the United States and Smith] proposed resolution of the US' claims against you [Smith] in the PCLS litigation"). (Doc. No. 161-1 at 41-44). Smith replied, confirming receipt, stating: "And I want to say thank you for the way I was treated through the process. And the Judge was awesome. I gained a respect for all. I will uphold my end of the bargain." (*Id.* at 45).

The United States continued to communicate with Smith while it worked to obtain the necessary governmental approvals for the settlement. On March 24, 2021, the United States advised Smith that it was still waiting on final approval, but shared drafts of the pleadings it anticipated filing in order to effect the settlement: the unopposed motion for entry of consent order and final judgment, and the proposed consent order. (*Id.* at 46-53). AUSA Armstrong asked Smith to review the pleading and call her with any questions. Smith confirmed that he would. (*Id.* at 54). AUSA Armstrong followed

---

[1] Smith argues that the Court should not consider the United States' representation that Smith did not inform the government of a desire to engage counsel at the mediation or the absence of any evidence from the mediator of Smith making any request for counsel. First, the United States is not prohibited from making any representation as to what Smith did or did not say *to the government* during the mediation so long as the evidence does not violate Federal Rule of Evidence 408, which is not applicable here. Similarly, Smith may, but notably has not, provided a counter-affidavit challenging the government's representations. With respect to what transpired between the mediator and Smith, the Court need not and does not consider the United States' speculation as to whether Smith told the mediator that he wanted counsel. However, on this point, the Court notes again that Smith had the opportunity to provide his own evidence of a request for counsel but has failed to do so and further notes that the Court would expect that if such a request for counsel had been made the mediator would have taken some action in response to the request (which is not reflected in the record).

6

up with Smith again on March 25, 2021. (*Id*. at 55). Smith did not, however, follow up with the United States with any questions or to discuss the draft pleadings.

On March 26, 2021, AUSA Armstrong notified Smith via email that the United States had obtained the necessary approvals for settlement. (*Id*. at 56). She told him that she planned to file the motion and consent order that was previously provided to Smith in draft form on March 24, 2021, and asked Smith to let her or AUSA Johnson know if he was ready to sign, or to email a signed copy of his signature page. (*Id*.). AUSA Armstrong also reminded Smith of the approaching deadline to complete the settlement and Smith replied "Perfect. No issues with me." (*Id*.). Smith returned his signature page to AUSA Armstrong on March 28, 2021, (*id*. at 58-61), and again on March 29, 2021. (*Id*. at 62-65). On March 29, 2021, the United States filed the Unopposed Motion for Entry of Consent Order and Entry of Final Judgment Against Defendant Douglas Smith (Doc. No. 145) and the Proposed Consent Order (Doc. No. 145-1) and on March 30, 2021, the Court entered its Order granting that Motion and directing the Clerk of Court to enter final judgment as to Defendant Smith (Doc. No. 146).

In summary, contrary to Smith's arguments, this history establishes that the AUSAs representing the United States acted appropriately with respect to Smith and did not in any way interfere with his opportunity to engage counsel. Indeed, the AUSAs *reminded* Smith that he could engage counsel and clearly stated that they could not provide him legal advice. Moreover, the Court was not misled as to Smith's intention to hire counsel. Rather, the Court discussed Smith's opportunity to engage counsel and whether he planned to do so directly with Smith during the January 27, 2021 status conference. During that discussion it was clear both that Smith understood he could employ counsel to represent him and that he might do so, but only if he were unable to settle the claims against him, which he wanted to first try to resolve himself. It was not incumbent on either the Court or the United States to interfere with Smith's clearly expressed desire to pursue a settlement without counsel. To be sure, now that he has the benefit of counsel, Smith apparently wishes he had engaged counsel to assist him in his settlement discussions; however, Smith's possibly imprudent but entirely voluntary

7

decision to represent himself and agree to the consent judgment (which did reflect a significant compromise of the full amount of liability which he might have incurred as a result of a trial) is not grounds for the Court to relieve him of the Judgment under Rule 60(b)(3). Smith had a full and fair opportunity to defend himself and chose to settle the claims against him. Therefore, Smith's Rule 60(b)(3) motion will be denied.

## II.     Relators' Motion for Attorneys' Fees

The second pending motion is Relators' Motion for Attorneys' Fees and Costs. By this motion, the individuals who filed the initial *qui tam* actions in which the United States ultimately intervened, the "Relators," seek attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d)(1), Fed. R. Civ. P. 54(d) and Local Rule 54.1.

Defendant McHugh objects to Relators' motion on two broad grounds.[2] First, McHugh argues that the settlement payment he agreed to make to the United States relates only to conduct and claims asserted by the United States in its Complaint in Intervention (not the Relators' original Complaint) and therefore Relators are not entitled to fees and costs under Section 3730(d)(1) for the settlement of claims they did not bring. In reply, Relators argue that because the United States has agreed to pay a "relators' fee" under Section 3730(d)(1) the award of attorneys' fees and costs is mandated by the statute, and McHugh is not entitled to collaterally attack the government's agreement to pay the relators' fee from which the Defendants liability for attorneys' fees and costs follows. Second, McHugh argues that Relators' are not entitled to an award of all the attorneys' fees and costs they have requested based on Relators' counsel's failure to keep contemporaneous time records and various specific objections to the nature and amount of the requested fees.

---

[2] Defendant Smith has not filed any objection to the Relators' motion for attorneys' fees and costs.

Based on the findings of fact and conclusions of law discussed below, the Court concludes that Relators are entitled to an award of attorneys' fees and costs, but that the amount of the fee recovery for Relators' primary law firm must be reduced, chiefly based on their lack of contemporaneous time records and use of .25 of an hour minimum increments in their "reconstruction" of their time, which make it difficult for the Court to determine the actual amount of compensable time the firm spent on the case.

### A.     Factual Background

On January 7, 2014, Relators filed a complaint under seal in the U.S. District Court for the Eastern District of Tennessee, Civ. No. 3:14-cv-5, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, based on healthcare fraud against Physicians Choice, Smith, McHugh, and 32 other named defendants.  In the action, Relators were represented by David A. Burkhalter, II and colleagues in his Knoxville, Tennessee law firm.

More specifically, the Relators, all of whom are former employees of entities utilizing Physicians Choice Laboratory Services (hereinafter "PCLS") alleged that in or before 2009 through the date of the filing of the Complaint, the defendants engaged in a far-reaching, interrelated and intertwined scheme, whereby PCLS would provide various forms of kickbacks in return for the medical clinics steering business to PCLS. (*See* Complaint, Civ. No. 3:17-cv-46, ¶¶8-15, 208-257).  Defendants McHugh and Smith, the alleged "founders," "managing members," and "owners" of PCLS, were named as individual Defendants in the Complaint and accused of participating in the schemes either through their own actions or through their positions at PCLS. (*See* Complaint ¶¶8-15, 59, 62, 65, 70, 77-79, 95).

After a lengthy investigation of Relators' allegations, on January 19, 2017, the United States Attorney's Office for the Eastern District of Tennessee filed a Motion to Transfer Venue,

pursuant to 28 U.S.C. § 1404(a), to transfer the Relators' case from the Eastern District of Tennessee to the Western District of North Carolina, which was granted by Chief Judge Thomas Varlan of the Eastern District of Tennessee via sealed Memorandum and Order on January 31, 2017, and the case was thereafter transferred to this Court. Based upon the evidence, on February 19, 2019, the United States elected to intervene in part and declined in part in Relators' case and also moved to partially unseal the case (Civ. No. 3:17-cv-46 at Doc. 70), which was granted by the Court on February 20, 2019. (*Id.* at Doc. 71). The United States intervened regarding the illegal kickback schemes of PLCS and its agents, including Defendants McHugh and Smith. (*Id.* at Doc. 70). The United States declined to intervene as to certain other claims alleged in the Complaint but recognized that Relators were allowed to "maintain the declined portion of the action" within statutory limitations. (*Id.*). Thereafter, Relators chose not to pursue the non-intervened claims. (*See* Court's Order, Civ. No. 3:17-cv-37, Doc. 62) (granting Relators' motions to voluntarily dismiss non-intervened claims and certain defendants). On June 20, 2019, the Court granted the United States' Motion to Consolidate the Relators' case (Civ. No. 3:17-cv-46) and another *qui tam* case (Civ. No. 3:17-cv-37) (hereinafter "Hartnett Complaint"), and designated the case, Civ. No. 3:17-cv-37, to be the lead case since it was the first to be filed in the Western District of North Carolina. (Civ. No. 3:17-cv-37 at Doc. 37).

Thereafter, the United States litigated the intervened claims against Defendants, Manoj Kumar, Phil McHugh, and Douglas Smith. PCLS is listed as a Defendant in this action, but the company ceased doing business and became defunct in or around 2016—after Relators reported the company's fraudulent conduct in their *qui tam* Complaint. (Burkhalter Dec. ¶19). On December 17, 2019, this Court approved the settlement between the United States and Defendant Manoj Kumar. (*See* Doc. 94). Since Defendant Kumar was not specifically named in Relators'

Complaint as a defendant, Relators did not seek a relator's share related to his settlement. (Burkhalter Dec. ¶19).

On March 24, 2021, the United States and Relators entered into a Settlement Agreement with Defendant Phil McHugh regarding the intervened claims arising from McHugh's participation in the kickback schemes—which caused PCLS to submit false claims to Medicare from June 20, 2013 through October 26, 2015—to: (1) provide urine drug testing equipment, including desktop analyzers and associated supplies and services, to physicians John Johnson and John Nickels in order to induce their referrals of quantitative urine drug tests to PCLS; (2) cause PCLS to pay volume-based commissions, and later a salary, to Defendant Manoj Kumar in exchange for his exercise of influence over the practices of physicians Gregory Masimore and Yunus Shah in order to induce their referrals of quantitative urine drug tests to PCLS; and (3) provide loans to physicians Orlando Florete and Sanker Jayachandran in order to induce their referrals of quantitative urine drug tests to PCLS (referred to as the "Covered Conduct"). (*See* McHugh Settlement Agreement, attached as Exhibit 1 to Stipulation of Dismissal of Claims Against Defendant McHugh, at Doc. 143-1).

The Settlement Agreement requires Defendant McHugh to pay $2,021,795.57 with installment payments over a period of ten (10) years. (*Id.*). The Settlement Agreement specifically did not release Relators' statutory entitlements to attorney's fees/expenses under the False Claims Act, and further provided that the "United States does not contest that Relators are entitled to a share percentage in the proceeds of this Settlement Agreement" with Defendant McHugh. (*Id.*). Each of the Relators signed the Settlement Agreement along with Defendant McHugh, in addition to the other interested parties and their counsel. (*Id.*).

11

On March 25, 2021, the United States filed a Stipulation of Dismissal of Claims Against Defendant McHugh regarding the settlement between the United States, Defendant McHugh, and Relators in this matter. (Doc. 143). On March 26, 2021, the Court approved dismissal of the claims against Defendant McHugh, the Settlement Agreement, and further retained jurisdiction regarding the amount of Relators' attorney's fees and costs. (Doc. 144). On March 29, 2021, the United States filed an Unopposed Motion for Entry of Consent Order and Final Judgment against Defendant Smith in the amount of $4,500,000.00 for the intervened claims of Defendant Smith and others participating in various kickback schemes to offer or provide benefits to physicians in exchange for the referral of patient samples to PCLS for drug testing. (Doc. 145). Like Defendant McHugh, the Court's Order approving the Final Judgment against Defendant Smith also specified the Court would retain jurisdiction over Relators' claim for attorneys' fees/expenses pursuant to the FCA, 31 U.S.C. § 3730(d). (Doc. 146). In light of the above, that the United States agreed to pay Relators' a share regarding Defendant McHugh's settlement and Defendant Smith's judgement (Burkhalter Dec. ¶19), Relators hereby seek their attorneys' fees and expenses, both jointly and severally, against Defendants McHugh and Smith.

### B.      Discussion

### 1.      Relators' Entitlement to an Award of Attorneys' Fees

The Court starts its analysis, as it must, with the language of the relevant statute. Section 3730(d)(1) provides as follows:

> If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information . . . relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office

12

report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation. Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. **Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.**

31 U.S.C. § 3730(d)(1) (emphasis added).

Accordingly, the triggering event under the statute for Relators' entitlement to attorneys' fees and expenses is the payment of a share of the settlement proceeds to the Relators. *See United States ex rel McNeil v. Jolly*, 451 F. Supp. 3d 657, 667–68 (E.D. La. 2020) ("Based on the plain language of § 3730(d)(1), a person who is entitled to attorneys' fees, costs, and expenses is one who receives a payment from the proceeds of the action or settlement of the claim. The statute clearly states that any payment 'to a person' shall be made from the proceeds, and that '*any such person*,' shall also receive attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).") (emphasis in original); *see also CFI, LLC v. Victaulic Co.*, No. CV-13-2983, 2019 WL 4280494, at *1 (E.D. Pa. 2019) ("Unlike the discretion afforded district courts in reviewing an award of fees to prevailing parties in civil rights cases, Congress requires we award reasonable attorney's fees and expenses to parties who recover money for the United States under the False Claims Act."); *United States ex rel. Chiba v. Guntersville Breathables, Inc.*, 421 F. Supp. 3d 1241, 1250 (N.D. Ala. 2019) ("Because the Relators at bar obtained a share of the proceeds recovered by the Government, they secure an entitlement to attorneys' fees, expenses, and costs."). Here, Relators have entered into an agreement with the United States to be paid a share of the settlement proceeds from the government's settlements with both Defendants Smith and McHugh. *See* Doc.

No. 155-1 at ¶¶ 2-3. Therefore, absent some countervailing evidence, statutory construction or other principle of law, Relators are entitled to an award of reasonable attorneys' fees and costs.

McHugh does not challenge Relators' entitlement to attorneys' fees under Section 3730(d)(1) on the grounds that the statute does not require the Court to award attorneys' fees to a Relator who recovers a share of the proceeds or settlement of a *qui tam* action, but rather claims that Relators are not eligible for a share of the settlement proceeds (at least relating to McHugh) because "Relators cannot show that the Government proceeded with any action or settled any claim that Relators brought against McHugh." The Court need not, however, reach the merits of McHugh's argument against the government and Relator's agreement to pay Relators a portion of the Defendants' settlements. The statute by its terms clearly appears to condition the award of fees and costs only on the payment of a share of the settlement proceeds, which makes a relator "such [a] person" who "shall also receive … reasonable attorneys' fees and costs."

Moreover, McHugh has not cited any authority that permits a defendant to collaterally attack the United States' decision to pay a share of its settlement proceeds to a relator.[3] Indeed, allowing FCA defendants to litigate the entitlement of Relators to a share of settlement proceeds notwithstanding the government's agreement to pay the Relators under 31 U.S.C. § 3730(d)(1) would inevitably result in frequent ancillary litigation because defendants would often dispute that a relator is entitled to a relator's share to avoid being liable for the relator's statutory fees and

---

[3] In support of his position, McHugh cites several cases adjudicating – between the government and relators as adverse parties – whether the relator(s) were entitled to any relator's share of the settlement proceeds. *See, e.g.*, *Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368 (8th Cir. 2015). However, those cases, while of course instructive on the question of a relators' entitlement to a "relator's fee," do not address much less authorize the right of a FCA defendant to collaterally attack an *agreement* between those same parties to pay a relator a portion of the settlement proceeds.

costs. In the absence of clear statutory or other authority, the Court is unwilling to adopt such a significant new avenue for FCA litigation.

Finally, even if a FCA defendant were arguably allowed in certain circumstances to collaterally challenge the government's agreement to pay a portion of settlement proceeds to a relator (a conclusion which as noted the Court does not reach), McHugh would not be able to attack the Relators and government's agreement in light of his own Settlement Agreement with the United States, which included the Relators as signatories and clearly contemplated that Relators would be likely to receive a share of the settlement proceeds. *See* Doc. 143-1 (The "United States does not contest that Relators are entitled to a share percentage in the proceeds of this Settlement Agreement."). Having agreed to his own settlement which included a provision directly disclosing that the United States agreed not to contest Relators entitlement to a "relator's share" of the settlement proceeds, McHugh cannot now argue that the United States could not properly agree to pay Relators a portion of the settlement. That is, the time for McHugh to have questioned the appropriateness of Relators receiving a share of the settlement proceeds was when he negotiated his settlement not as a collateral attack as part of his efforts to avoid paying attorneys' fees.

In sum, the Court finds that Relators are entitled to an award of attorneys' fees under 31 U.S.C. § 3730(d)(1).

### 2. The Amount of Relators' Reasonable Attorneys' Fees and Costs

Once a party crosses the statutory threshold to a fee award of some kind, the Court has discretion to determine the amount of the award. *J.D. ex rel. Davis v. Kanawha County Bd. of Educ.*, 571 F.3d 381, 387 (4th Cir. 2009) (*citing Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789-90, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)); *Robinson v. Equifax Info. Services,* 560 F.3d 235, 243 (4th Cir. 2009). "In Hensley, the Supreme Court noted that '[t]here is no precise rule or formula' for determining the amount of attorneys' fees, and that district courts

15

'necessarily [have] discretion' in such matters." *Kanawha County Bd.*, 571 F.3d at 387 (quoting Hensley, 461 U.S. at 436-37). The burden is on the party requesting fees and costs to demonstrate, by clear and convincing evidence, that the fees and costs requested are reasonable. *EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 572 (E.D. Va. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)); *see also Bland v. Fairfax Cty.*, 2011 WL 5330782, at *3 (E.D. Va. Nov. 7, 2011).

In determining a reasonable fee, the court employs the twelve-factor test set out by the Supreme Court in Hensley:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n. 3 & 434 (adopting same from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley,* 461 U.S. at 433. This is the "lodestar" approach, which is regularly employed in numerous contexts in which Federal courts are called upon to determine the amount of reasonable attorneys' fees. *See Kanawha County Bd.*, 571 F.3d at 387.

A Plaintiff must "furnish specific support for the hourly rate[s] [it] proposes." *Nutri/System*, 685 F. Supp. at 573. A court must consider the "prevailing market rates in the relevant community" when determining what a reasonable hourly fee is in a given case. *Rum*

*Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits," however, "[i]n circumstances where it is reasonable to retain attorneys from other communities ... the rates in those communities may also be considered." *Id.* This is generally accomplished "through affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence that allows the court to determine 'actual rates which counsel can command in the [relevant] market.'" *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012) (quoting *Spell*, 824 F.2d at 1402). Finally, in determining the reasonable hourly rate in a given case, a court may look toward the *Johnson* factors, specifically factors three, five, nine, and twelve. *See Alexander S.*, 929 F. Supp. at 936-38 (considering *Johnson* factors three, four five, eight, nine, ten, eleven, and twelve when determining reasonable hourly rate). The Court finds that Relators have fully supported their counsel's proposed hourly rates with appropriate descriptions of counsel's experience and evidence of the prevailing reasonable rates in the relevant jurisdictions. Also, McHugh does not challenge Relators' counsel's proposed hourly rates. Therefore, the Court accepts Relators' counsel's proposed hourly rates for purposes of calculating the "lodestar" value of counsel's services.

However, McHugh does dispute the amount of Relators' counsel's requested compensable time which should be included in the "lodestar" calculation. "Proper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." *See Nutri/System, Inc.,* 685 F. Supp. at 573; *Anderson v. Godley*, 2009 WL 2881080, at *12 (W.D.N.C. Sept. 8, 2009). Indeed, fee claimants must submit documentation that reflects "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity," sufficient to permit

the court to weigh the hours claimed and exclude hours that were not "reasonably expended." *Nutri/System, Inc.,* 685 F. Supp. at 573. Here, Relators' counsel Mr. Burkhalter acknowledges that his firm "did not keep time records contemporaneously for the majority of the time entries" for which Relators seek attorneys' fees but did "make a good-faith reconstruction of [its time]"[4] which it has provided to the Court. *See* Doc. No. 149-1.

When counsel seek fees in the absence of contemporaneous records of their time spent on a matter or other inadequate billing records, courts have responded by discounting off the total fees requested a stated percentage ranging from 10 to 40% to address the deficiencies in the application. *See, e.g.*, *Yohay v. City of Alexandria Emp. Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987) (reducing award by 20% due to inadequate documentation of time spent on litigation), *Jones v. Southpeak Interactive Corp. of Del.*, No. 3:12CV443, 2014 WL 2993443, at *13 (E.D. Va. July 2, 2014), *aff'd,* 777 F.3d 658 (4th Cir. 2015) (applying an across-the-board reduction of 10% to attorney fees due to lack of contemporaneous record keeping), *Synthon IP, Inc. v. Pfizer, Inc.*, 484 F. Supp. 2d 437, 444 (E.D. Va. 2007) (reducing award by 20% for failure to exercise billing judgement); *Nutri/System, Inc.,* 685 F. Supp. at 576 (*citing Uzzell v. Friday,* 618 F. Supp. 1222, 1226, 1229 (M.D.N.C.1985) (fees reduced 25% for attorneys and 35%

---

[4] Mr. Burkhalter also represents in his declaration in support of the request for attorneys' fees that his firm's "reconstruction" of their time reflects a "discount" of "at least thirty percent (30%) approximately." (Doc. No. 149-1 at 5). While the Court accepts counsel's representation of their good faith efforts to "discount" their time, the Court cannot accept this calculation. First, the time entries date back to 2012 and counsel provides no information as to how it "reconstructed" its time *without records* for services provided so long ago. Thus, a "discount" off of an amount that is itself at best speculation is no more persuasive than companies that trumpet huge "discounts" off of inflated prices that do not reflect actual transactions in the marketplace. Also, Mr. Burkhalter does not disclose how or why he estimated the 30% discount, i.e., whether it was a discount across the board or based on a total of more specific adjustments so the Court can assess the reasonableness of the claimed time spent in the first place. Accordingly, the Court must take the Relators' requested "lodestar" of fees at face value as a starting point for further reduction without regard to any claimed "prior" discount.

for paralegals as a result of inadequate documentation)); *Guidry v. Clare*, 442 F. Supp. 2d 282, 293–96 (E.D. Va. 2006) (reducing proposed award by 40% based on inadequate billing records and other considerations).

In addition to the failure to keep contemporaneous time records, in the Burkhalter firm's reconstruction of its time records, it used minimum and subsequent billing increments of .25 hour for all its time entries no matter how routine or simple the task, *See, e.g.,* (Doc. No. 149-1 at 10-12) (including 0.25 entries for reviewing the following filings: an affidavit of service, orders granting motions for extension of time, a text only case management order, notices of appearances for the undersigned, a notice of appearance for Assistant U.S. Attorney Seth Johnson, an order granting McHugh's prior counsel's motion to withdraw, and certificates of settlement conferences). While the use of minimum time entries (such as .1 hours) is not unreasonable, an award of attorneys' fees should, especially in calculating the "lodestar" amount of fees, reflect actual time spent by counsel on the engagement. For example, the time entries of Mr. Angel,[5] Relators' local counsel, include numerous entries of .1 hours for the same type of routine document case review for which the Burkhalter firm used .25 hours. *See* Doc. No. 149-2. And, this lack of specificity (which the courts often chastise as inadequately described "block" or "lumped" billing) is not limited to only the use of .25 hour minimum billing but .25 hour increments throughout the billing records. *See Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 525-26 (E.D. Va. 2017) (noting that "[t]he traditional remedy for block billing is to reduce the fee by a fixed percentage reduction" and reducing total hours by 10%); *Wolfe v. Green*, 2010 WL 3809857, at *8 (S.D.W. Va. Sept. 24, 2010) (collecting cases applying 10% or 15% reduction for block billing

---

[5] The Court finds that Mr. Angel's billing records do not suffer from the same inadequacies as the Burkhalter firm time records and will, accordingly, award fees to him in the full "lodestar" amount requested.

19

and opting to apply 10% reduction for block billing where hours did not appear facially unreasonable).

In addition to these threshold concerns, McHugh identifies a number of more specific objections, including the unreasonableness of Counsel's time spent reviewing documents post-intervention, the results obtained, time spent "updating" time entries, vague time entries, time spent working on other legal matters for the Relators, time spent preparing a fee agreement with Relators, and time spent negotiating a "sharing agreement" with the Hartnett relators. However, because as discussed above and below, the Court has determined that it should exercise its discretion to reduce Relators' fee award by a stated overall percentage to account for counsel's billing inadequacies, it finds that such a reduction also fairly encompasses McHugh's more specific complaints, to the extent they are meritorious, so the Court need not address each of them separately.

In sum, fixing the appropriate amount of attorneys' fees and costs to be awarded is, in the end, a matter of judgment, and not merely or solely the result of an arithmetic exercise. To be sure, the exercise must begin with a consideration of the arithmetic calculation of the lodestar figure. But, this is only the starting point in the analysis. Once the lodestar figure is calculated, the district court, as a matter of judgment, must then assess whether that figure should be adjusted, upward or downward, on the basis of all the circumstances in the case, including the *Johnson* factors. As one circuit court put it, ultimately, "[t]he matter of attorney fees rests, of course, within the sound discretion of the trial judge, who is in the best position to determine whether, ... [and to what extent], they should be awarded." *Kimberly-Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1458 (Fed. Cir. 1984). And, in all instances, it is important to remember that "[a] request for attorney's fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933.

In total, including all claims for fees and expenses in connection with the litigation of attorneys' fees, Relators seek $147,815.06 for The Burkhalter Law Firm, P.C. ($145,512.50 in fees and $2,302.56 in expenses) and $6,800 to the Angel Law Firm, PLLC. After a full and careful review of all the facts and circumstances presented, the Court in the exercise of its judgment and discretion finds that a reduction of 30% should be taken from the fees requested by the Burkhalter firm and the Angel firm should receive all its requested fees. Therefore, the Court will award $101,858.75 in fees and $2,302.56 in expenses ($104,161.31 in total) to the Burkhalter firm and $6,800 to the Angel firm as Relators' counsel's reasonable attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d)(1).

### III.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1.  Defendant Smith's Motion for Relief From Judgment Pursuant to Rule 60(b)(3) FRCP (Doc. No. 157) is **DENIED;**

2.  Relators Motion for Statutory Attorneys' Fees and Expenses (Doc. No. 148) is GRANTED in PART as follows: Defendants Douglas Smith and Philip McHugh are ordered to pay, jointly and severally $104,161.31 to The Burkhalter Law Firm, P.C. and $6,800 to the Angel Law Firm, PLLC as Relators' counsel's reasonable attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d)(1); and

3.  The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 20, 2021

Kenneth D. Bell
United States District Judge

21